TATREAU, Guardian *ad litem*, Respondent, vs. BUECHER, Appellant.*

*December 2—December 30, 1949.*

---

\* Motion for rehearing denied, without costs, on March 7, 1950.

*Charles L. Mullen* of Milwaukee, for the appellant.
*Sydney N. Leshin* of Milwaukee, for the respondent.

MARTIN, J. The first issue in this case is whether James Tatreau was lawfully on defendant's premises.

Dennis Tatreau, brother of James Tatreau, was the regular newsboy, and defendant was one of his customers. Defendant instructed the newsboy to leave the Sunday paper inside the rear door, rather than on the front steps, since the paper had become wet on the first Sunday the newsboy had delivered it. James Tatreau was helping his brother peddle the route and had delivered papers twice before to defendant's back door. He was told to go around to the rear. The evidence is clear that the act of leaving the newspaper was one that could be delegated to James by his brother. See Restatement, 1 Agency, p. 54, sec. 17.

Defendant's premises had a front entrance, through the tavern, a rear entrance with a porch about ten feet from the sidewalk on Ninety-Sixth street, and a rear and side yard inclosed by a fence. The fence on Greenfield avenue was so constructed as to indicate provision for a gate. There was, however, no gate, and the areaway was open. James Tatreau received the paper to be delivered while he was in front of the tavern, and this open entrance was directly before him. This was a natural and logical route and complied with defendant's instruction to the newsboy, which was merely to deliver the paper to the rear door. The trial court properly instructed the jury that, as a matter of law, James Tatreau was not a trespasser at the time in question.

The next issue is whether sec. 174.02, Stats., imposes an absolute liability upon the owner of a dog. This section provides:

"The owner or keeper of any dog which shall have injured or caused the injury of any person . . . shall be liable to the person so injured . . . for all damages so done, without proving notice to the owner or keeper of such dog or knowledge by him that his dog was mischievous. . . ."

After James Tatreau went through the open entrance into defendant's yard, defendant's dog jumped on him and

bit him. The testimony is undisputed that when he was bitten he was knocked down, and that he did not know what he was doing then. He kicked the dog, and the dog bit him again. He kicked a second time, and the chow dog moved away. There is no evidence as to any act on the part of James Tatreau which might have brought on, or contributed to the viciousness or mischievousness of the dog. The kicking was self-defense to ward off the vicious attack.

The cases cited by defendant are distinguished for in the present case there is no evidence of any contributory negligence on the part of James Tatreau. It would be plain conjecture that the boy might have done anything to antagonize the dog to jump on him and bite him.

In considering sec. 174.02, Stats., in *Janssen v. Voss* (1926), 189 Wis. 222, 223, 207 N. W. 279, it was stated:

"The trial court was no doubt correct in holding that the degree of care exercised by the defendant in providing for the keeping of the dog was immaterial. *Legault v. Malacker,* 166 Wis. 58, 163 N. W. 476."

The decision in the *Janssen Case* disposes of defendant's contentions as to the care exercised by him in tying the dog.

The evidence is undisputed that James Tatreau was bitten by a dog owned by the defendant. The bites were seen by James Tatreau and his brother and mother, Dennis Tatreau and Mae Tatreau, respectively, and the defendant who suggested that James be taken to a doctor. The verdict of the jury is amply supported by the evidence.

The trial court granted permission for James Tatreau to exhibit his leg to the jury to show the residuals of the bites, the scars, and the defendant contends that this was highly prejudicial and incompetent.

While no medical testimony was offered by the plaintiff, the fact as to James Tatreau's hospitalization for a period of five days and his medical treatment thereafter, are not in dispute. Defendant has inferred a weakness from the failure

of plaintiff to bring in medical testimony. However, if defendant felt something was being hidden, the hospital records and doctor's report were equally available to the defendant.

The exhibiting of the injured portion of James Tatreau's body was not prejudicial, and was within the trial court's discretion under the facts and circumstances of the case. See 4 Wigmore, Evidence (3d ed.), pp. 258, 259, sec. 1158.

Defendant has stated in his brief:

"We cannot overlook the fact that James first talked with the defendant two months after the dog bites, said nothing of the bites, or the extent of the damages, but went there solely to collect for the papers delivered. Nor did the parents of James speak to the defendant about the bites or the effects thereof, at any time, although the defendant had asked Dennis about James. The first knowledge the defendant had was the notification he received five months later from the attorney for the plaintiff."

There is no mystery about the fact that James Tatreau was injured. As stated previously, defendant saw the bites and ordered the parents to take him to a doctor.

The evidence discloses that the questions in the special verdict covered the issues involved, and the trial court properly entered judgment on the verdict.

*By the Court.*—Judgment affirmed.